UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
JESSICA POWNALL, individually and :
on behalf of all others similarly situated, : CASE NO. 1:10-CV-00894
:
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 10]
PNC BANK, a National Association, as :
successor in interest to National City Bank, :
:
Defendant. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this breach of contract and Truth In Lending Act case, Defendant PNC Bank moves this Court to dismiss Plaintiff Jessica Pownall's putative class action Complaint. [Doc. 10.]

Plaintiff Pownall says PNC improperly charged her a credit card finance charge after she made a timely in-person payment at a PNC Bank branch location. Accordingly, Plaintiff brings claims for breach of contract, breach of the duty of good faith and fair dealing, and two violations of the Truth In Lending Act ("TILA"). [Doc. 1 at 1.]

For the following reasons, the Court **DENIES** Defendant's motion to dismiss Plaintiff's breach of contract and first TILA claim. The Court, however, **DISMISSES** the Plaintiff's breach of the duty of good faith and fair dealing claim and second TILA claim.

**I. Background**

Case No. 1:10-CV-00894
Gwin, J.

Plaintiff Pownall brings this putative class action against Defendant PNC Bank based on its credit card payment and finance charge practices. Essentially, Plaintiff says PNC Bank uniformally and improperly levies finance charges on its credit card customers even after they make timely in-person payments at PNC Bank branch locations.

Pownall entered into a Cardholder Agreement with PNC (formerly National City Bank) and was issued a PNC credit card. [Doc. 1 at ¶8.] After Pownall used her credit card, PNC sent her a Monthly Statement that said a minimum payment of $105.00 was due by June, 6, 2009. [Doc. 1 at ¶18.] Alternatively, Plaintiff could pay her entire balance of $3670.00 by June 6, 2009 and avoid a finance charge on her credit card purchases. [Doc. 1 at ¶19.]

On Saturday, June 6, 2009, the payment due date, Plaintiff's husband made the full payment of $3670.00 in-person at a PNC Bank branch in Akron, Ohio. [Doc. 1 at ¶20.] Although Pownall had made the payment on June 6, 2009, PNC Bank credited the payment to Plaintiff's account on Monday, June 8, 2009—two days after the payment had been made and after the due date. [Doc. 1 at ¶87.]

The next month, Defendant PNC Bank sent Pownall a new monthly statement that said it had imposed a finance charge of $78.25. [Doc. 1 at ¶22.] The $78.25 finance charge was based on Plaintiff's average daily balance for a thirty-two-day billing cycle—the regular billing-month plus the time between Plaintiff's branch payment (June 6) and PNC Bank's crediting (June 8). [Doc. 1 at ¶87.] Plaintiff was not charged a late fee.

Based on these alleged uniform billing practices, Plaintiff brings this putative class action. On July 2, 2009, Defendant filed a motion to dismiss Plaintiff's First Amended Complaint in its entirety. [Doc. 10.] Pownall opposed the motion on August 4, 2010, [Doc. 21], and PNC Bank

Case No. 1:10-CV-00894
Gwin, J.

replied on August 23, 2010. [Doc. 24.]

## II. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's legal conclusions as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1949 (citations removed). Rule 8 does not require "detailed factual allegations, but it requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations and internal quotations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is not a "probability requirement" but requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.* The Supreme Court has explained the line between possible and plausible: "Where a complaint pleads facts that are merely consistent with a defendants liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and internal quotations omitted).

Although a court generally confines its review to matters contained in the Complaint, under Rule 10(c), "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading

-3-

Case No. 1:10-CV-00894
Gwin, J.

for all purposes." Thus, a court presented with a Rule 12(b)(6) motion "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### III. Analysis

#### A. Breach of Contract

PNC Bank says this Court must dismiss Pownall's breach of contract claim because the parties' contract—the Cardholder Agreement and Monthly Statement—clearly and unambiguously permits the disputed finance charge. Plaintiff responds that the contract contains a confusing ambiguity as to the payment and finance charge procedures and that determining whether a breach actually occurred is not an appropriate undertaking when deciding a Rule 12(b)(6) motion. Because Pownall has put forth facts in her pleading that, if accepted as true, would entitle her to some relief, the Court denies Defendant's motion to dismiss Pownall's breach of contract claim.

To state a claim for breach of contract, the plaintiff must allege: "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994). Here, Plaintiff Pownall says that the parties had a contract, that she performed her obligations under the contract, that the Defendant breached the contract by charging her a finance charge even though she paid the full balance owed by the due date, and that she has suffered damages as a result. [Doc. 21 at 4.]

In moving to dismiss Plaintiff's claim, Defendant points to the Cardholder Agreement that states PNC Bank will "post your payments as of the day we *receive* them as described on your

Case No. 1:10-CV-00894
Gwin, J.

Statement," and "[f]inance charges will continue to be imposed until the date payment in full . . . is *posted* to your account." [Doc. 11 at 6] (emphasis added). The referenced credit card Monthly Statement says: "If you make a payment at any other authorized banking location (branch) or if you fail to follow these payment instructions, the *crediting* of such payment to your account may be delayed by up to 5 days." [Doc. 11 at 6] (emphasis added). Defendant says these provisions authorized it to delay crediting Pownall's in-person branch payment to her account for up to five days. Consequently, Defendant continues, because Pownall's payment was not posted until June 8—two days after the June 6 due date but within the five day posting window—the contract expressly authorized the resulting finance charge.

Plaintiff responds, however, that the contract ambiguously uses the terms "paid," "posted," "received," and "credited." [Doc. 21 at 6.] Pownall also points to a different section of the Statement that says: "You may avoid finance charges on the new Purchases portion of your New Balance if you *paid* in full your previous New Balance by your due date." [Doc. 21 at 7.] (emphasis added). Essentially, Plaintiff says she "paid" $3670.00 on June 6, 2008, and at that time her balance was "paid in full."

At this stage of the litigation, the Court finds that the Defendant has failed to show as a matter of law that it has not breached the parties' contract. Accepting all inferences in favor of the Plaintiff, the contract's undefined terms "paid," "posted," "received," and "credited" create a confusing ambiguity as to whether Defendant violated the contract when it imposed the $78.25 finance charge. Thus, because Pownall alleges that she paid her balance in full on the due date but PNC Bank still imposed a finance charge—potentially violating at least one provision of the contract—she has sufficiently stated a claim for breach of contract. This Court, therefore, denies

-5-

Case No. 1:10-CV-00894
Gwin, J.

Defendant's motion to dismiss Count I.

### B. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff Pownall does not "contest the dismissal of [Count II] for Breach of the Covenant of Good Faith and Fair Dealing." [Doc. 21 at 2 n.4.] Indeed, under Ohio law, the implied covenant of good faith and fair dealing is not an independent basis for a cause of action. *See Dobrski v. Ford Motor Co.*, 698 F. Supp. 2d 966, 987 (N.D. Ohio 2010). This Court, therefore, grants Defendant's motion to dismiss Count II.

### C. Truth In Lending Act Violations

Plaintiff alleges two violations of the Truth In Lending Act, 15 U.S.C. § 1601 ("TILA") and its implementing regulation, 12 C.F.R. § 226 ("Regulation Z").

First, in Count III, Pownall says PNC Bank violated TILA when it failed to provide full, clear, and conspicuous disclosure of all information regarding finance charges. [Doc. 1 at ¶61.] As discussed above, after making all inferences in favor of the Plaintiff, the undefined terms "paid," "posted," "received," and "credited," as they relate to the calculation and implementation of finance charges, are insufficient disclosure of relevant information regarding finance charges. Moreover, because TILA is sympathetic to borrowers, a 12(b)(6) dismissal of Plaintiff's disclosure-based TILA claim at this stage of the litigation would be doubly inappropriate. *See Inge v. Rock Financial Corp.*, 281 F.3d 613, 621 (6th Cir. 2002) (reversing district court's dismissal of plaintiff's TILA claim noting that TILA, as a remedial statute, must be construed liberally in favor of consumers). This Court, therefore, denies Defendant's motion to dismiss Count III.

Second, in Count IV, Plaintiff says that even if Defendant was entitled to impose a finance charge, at most "TILA permits a maximum assessment of finance charges for only the two (2) days

Case No. 1:10-CV-00894
Gwin, J.

between the date she timely paid her balance in full and the date the payment was 'credited.'" [Doc. 21 at 19.] Plaintiff relies on the official commentary to Regulation Z that states: "If the creditor accepts a non-conforming payment (for example, payment at a branch office), when it had specified that payment be sent to headquarters, finance charges may accrue for the period between receipt and crediting of payments." 12 C.F.R. pt. 226, Supp. I § 226.10(b)(3).

But the official commentary must be read in tandem with Regulation Z itself, and to do otherwise would be "demonstrably irrational." *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980). Regulation Z expressly authorizes banks to take up to five days to credit a payment that is not made in accordance with the requirements specified by the bank: "If a creditor specifies, on or with the periodic statement, requirements for a consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the creditor shall credit the payment within 5 days of receipt." 12 C.F.R. § 226.10(b). It is beyond doubt that the official commentary only clarifies banks' right to charge interest during this five-day period, and does not otherwise limit finance charges that accrue before a non-conforming payment is tendered.

Plaintiff asks this Court to interpret § 226.10(b) to drastically limit the rights of creditors to impose otherwise legitimate finance charges. Even after interpreting Regulation Z most favorable to the Plaintiff, however, the Court cannot adopt Plaintiff's interpretation. Rather, the only plausible construction is that the drafters chose to recognize creditors' right to impose finance charges during the non-conforming payment posting period, in addition to all other legitimate finance charges. Accordingly, Defendant's motion to dismiss Count IV is granted.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss Count I and

-7-

-8-

Case No. 1:10-CV-00894
Gwin, J.

Count III.  The Court, however, **DISMISSES** Count II and Count IV.

    IT IS SO ORDERED.


Dated: August 31, 2010          s/ *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE